EXHIBIT A

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE FIFTHTEEN JUDICIAL CIRCUIT |
| | ) | COURT OF COMMON PLEAS |
| COUNTY OF HORRY | ) | CIVIL ACTION # 2020-CP-26- |

Stevens Law Firm, PC,                          )
James P. Stevens, Jr. and Natalie S.           )
Stevens-Graziani,                              )
                                               )
                    Plaintiffs,                )                    **SUMMONS**
                                               )
          v.                                   )
                                               )
United States Fire Insurance Company,          )
And Crum & Forster,                            )
                                               )
                    Defendants.                )
_____

TO EACH DEFENDANT ABOVE NAMED:

      YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer to said Complaint on the subscriber at 205 N. Irby Street, Florence, South Carolina, within thirty (30) days from the service hereof, exclusive of the date of such service; and if you fail to answer the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the Complaint.

                              **Barth, Ballenger & Lewis, LLP**

                              s/Kevin M. Barth
                              Kevin M. Barth, SC Bar # 559
                              Post Office Box 107
                              Florence, South Carolina 29503
                              Telephone No.:(843) 662-6301
                              kbarth@bbllawsc.com
                              Fax No.: (843) 664-8384

                              ***Attorneys for Plaintiff***

March 30, 2020

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE FIFTHTEEN JUDICIAL CIRCUIT |
| | ) | COURT OF COMMON PLEAS |
| COUNTY OF HORRY | ) | CIVIL ACTION # 2020-CP-26- |
| | ) | |
| Stevens Law Firm, PC, | ) | |
| James P. Stevens, Jr. and Natalie S. | ) | |
| Stevens-Graziani, | ) | |
| | ) | |
| Plaintiffs, | ) | **COMPLAINT** |
| | ) | (Non Jury) |
| v. | ) | |
| | ) | |
| United States Fire Insurance Company, | ) | |
| And Crum & Forster, | ) | |
| | ) | |
| Defendants. | ) | |

The Plaintiffs above named complaining of the Defendants herein would respectfully show unto this Court:

## **PARTIES AND JURISDICTION**

1.      Plaintiff, Stevens Law Firm, PC, is a professional corporation organized and existing under the laws of the State of South Carolina and does business as a law firm in the County of Horry, State of South Carolina; Plaintiff, Stevens Law Firm, PC is an insured under the policy of insurance which is the subject of this action; Plaintiff, James P. Stevens, Jr., is an insured under the policy of insurance which is the subject of this action, and Natalie S. Stevens-Graziani, is an insured under the policy of insurance which is the subject of this action.

2.      Defendant, United States Fire Insurance Company (herein after referred to as "U.S. Fire) is upon information and belief an insurance company organized and existing under the laws of a state other than the State of South Carolina and who transacts business in Horry County, South Carolina, and is therefore subject to the jurisdiction of this Court.

1

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

3.      Defendant, Crum & Forster (herein after referred to as "Crum"), is upon information and belief an insurance company, and/ or Third Party Administrator, organized and existing under the laws of a state other than the State of South Carolina and who transacts business in Horry County, South Carolina, and is therefore subject to the jurisdiction of this Court.

4.      That at all times relevant hereto, the Defendant, Crum, was acting individually and as agent for the Defendant, U.S. Fire.  Both corporations were acting by and through their employees, agents and/or servants, all acting within the course and scope of their employment with each Defendant

5.      This action involves a contract of professional liability insurance issued by the Defendants to the Plaintiffs in South Carolina insuring the Plaintiffs as a South Carolina law firm and partners within said law firm and therefore is subject to the jurisdiction of this Court. However, many of the issues involved in this litigation involve the application and interpretation of the South Carolina Rules of Professional Responsibility promulgated by the South Carolina Supreme Court, to regulate the behavior of lawyers practicing in the State of South Carolina.

## FACTS

6.      Defendant, U.S. Fire issued a Lawyers Professional Liability insurance policy, Policy # 580-322358-9 (hereinafter referred to as "the Policy") to the Plaintiffs.  A copy of the Policy is attached hereto and incorporated herein by reference.

7.      The Plaintiffs are informed and believe that the Policy issued by Defendants to the Plaintiffs contains the following provisions:

**I.   INSURING AGREEMENT**
   **A. Coverage**
      Subject to the Limit of Liability stated in Item 3. of the Declarations, the ***Insurer*** shall pay on behalf of the ***Insured*** all ***Damages*** and ***Defense Expenses*** in excess of

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

the Deductible as stated in Item 4. of the Declarations that the **Insured** becomes legally obligated to pay as a result of a **Claim** first made against the **Insured** and reported in writing to the **Insurer** during the **Policy Period** or during any applicable Extended Reporting Period, by reason of a negligent act, error or omission in the performance of **Professional Services** by the **Insured** or by someone for whom the **Insured** is legally responsible.

**B. Defense**

Subject to the terms conditions and exclusions appearing in other Sections of this policy, the **Insurer** has the right and duty to defend any covered **Claim** including, but not limited to, the appointment of legal counsel, even if any of the allegations of the **Claim** are groundless, false or fraudulent.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### VI.  GENERAL CONDITIONS
#### B.   Defense and Settlement

**1.** The **Insurer** shall have the right and the duty to defend any **Claim** regardless of whether the allegations are groundless, false or fraudulent. . . . . . . .

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**ENDORSEMENT No. LPL – 125 907/12)**

**AMEND DEFINITION OF PROFESSIONAL SERVICES ENDORSEMENT**

In consideration of premium charged, it is understood and agreed that **Section IV. Definitions, Professional Services** is amended to include:

(f)   those services as an administrator, conservator, receiver, executor, trustee, guardian, or any similar fiduciary capacity, or court-appointed trustee . . . . . . .

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

8.     This policy was in full force and effect when the below claims were made against the Plaintiffs.

9.     Plaintiff law firm fell prey to a scam whereby a settlement check was issued to the Plaintiff's trust account for the sum of $180,288.00.   A portion of this money was for legal services rendered by the Plaintiffs for the Client (imposter).   The remainder of the funds purportedly belonged to the imposter.

3

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

10.     The check was deposited into Plaintiff's trust account at Synovus Bank, and the client's funds were wired to him.   After the funds had been wired, it appeared that the check was a counterfeit check and was dishonored by the issuing bank.   As a result, Plaintiff's bank, Synovus Bank, without notice to Plaintiffs, removed or seized all of the funds in Plaintiff's trust account to cover the counterfeit check and began bouncing Plaintiff's trust checks previously issued to or on behalf of other clients and returning said checks for insufficient funds.   All of the funds removed by Synovus Bank belonged to other clients of Plaintiffs.   The entire trust account of Plaintiff of over $91,000 was depleted by the removal and/or seizure of said funds by Synovus Bank.

11.     As is required by the South Carolina Rules of Professional Responsibility, the law firm's senior partner, James P. Stevens, Jr., self-reported himself and his law firm notifying the Supreme Court Office of Disciplinary Counsel (ODC) of the fact that the firm's trust account had a negative balance in violation of these Rules and that the trust account contained numerous clients' funds and other claims which Plaintiffs were obligated to satisfy.   These same Rules also require that the Plaintiffs return the funds to the trust account within five days of being notified of the negative balance in that account.

12.     Over a period of time, Plaintiffs made arrangements to replace the clients' funds as required.   However, Plaintiffs were not able to replace the approximate $88,000 negative trust account balance claimed by Synovus Bank.   Synovus Bank then filed an arbitration lawsuit against Plaintiffs for that amount.   Plaintiffs also requested that the Defendants  defend the arbitration lawsuit and indemnify them from any judgment which might be rendered.   Moreover, prior to being able to replace clients' funds, Plaintiffs' various clients, whose money had been

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

seized by the bank, notified the Plaintiffs that they were making monetary claims for their portion of the funds previously in the trust account.

13.    Plaintiffs notified both Defendants in a timely fashion that these claims had been filed against it.   Plaintiffs demanded that the Defendant, U.S. Fire, provide it with a defense to the bank's claim for indemnification and demanded that this Defendant replace the trust funds that had been wrongfully removed from its trust account.

14.    Plaintiffs notified the Defendants that the FBI froze the funds transferred to imposter's bank account; but defendants failed to acknowledge this notice or respond with any useful assistance, information, or networking connection to mitigate the loss and/or the delay of their return.

15.    Plaintiffs (a two-member, small law firm) also discussed with defendants' agents (a large law firm with larger networking capabilities) their need for assistance to obtain a necessary declaratory order of the Hong Kong civil court to have the funds returned, but defendants failed to respond with any good faith assistance with this whatsoever.

16.    Defendants denied the claims by their letter dated September 5, 2018 wrongfully claiming that Plaintiffs' claim was a "first party" claim and contending that there was no coverage for first party claims and therefore no duty to defend or indemnify.   Moreover, the Defendants wrongfully claimed that the act of Plaintiffs self-reporting themselves to the ODC, which they were required to do under the S.C. Code of Professional Responsibility, was an "admission of liability" prohibited by the policy and denied Plaintiffs' claim on that basis as well.   In that same letter, the Defendants also stated that Plaintiffs were covered for reimbursement for responding to the ODC for attorney fees, court and regulatory body costs; however, Defendants have failed to

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

make any payment to Plaintiffs for same.    Prior to the Plaintiffs again making a claim for indemnification and a defense, Plaintiffs sought assistance to retain counsel in Hong Kong in an attempt to recoup some or all of the funds stolen by the imposter, but such efforts were strained because they knew no one and had no connection with anyone in Hong Kong.    Defendants provided no assistance to the Plaintiffs in this attempt. Plaintiffs (after much exhausted attempts) finally found legal assistance (on their own) to start the civil action in Hong Kong after one year of exhaustive efforts (august 2019).

17.    Plaintiffs again made claim under its policy of insurance by letters of September 20, 2018 and October 18, 2018 setting forth claims which had been made by clients and others for lost trust funds and other losses.    Plaintiffs advised the Defendants that it was legally and ethically obligated to pay the law firm's clients listed in its letters and that they were ethically obligated under the Rules of Professional Responsibility to self-report the loss of trust funds.    The Defendants acknowledged in its October 19, 2018 letter that the Plaintiffs had received claims from its clients and others for the lost trust funds and the negative balance in its trust account, but it again denied the Plaintiff's claim.    In denying the claim in its October 19, 2018 letter the Defendants acknowledged that they provided coverage to the Plaintiff "by reason of a negligent act, error or omission in the performance of Professional Services by the Insured or by someone for whom the Insured is legally responsible" and also acknowledged that "Professional Services" covered "(f) those services as an administrator, conservator, receiver, executor, trustee, guardian, or any similar fiduciary capacity."    However, the Defendants denied the Plaintiff's claim because Plaintiffs allegedly "admitted liability" by notifying its clients and the Office of Disciplinary Counsel (ODC) that it had lost the clients' trust funds as it was legally and ethically required to do

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

under the Rules of Professional Responsibility.    Defendants also wrongfully claimed a "lack of cooperation" and requested that Plaintiff provide it with all communications between the Plaintiff and the ODC, Synovus, all its clients, the identity of all clients making claims, the legal services provided to each client, the amount of each client's funds in the trust account, bank statements, deposit slips, checks, the fraudulent cashiers check, and any settlement agreements showing the amount of each client's funds in the trust account. .    Additionally, Plaintiffs were able to secure a "freeze" on the funds wired to Hong Kong through swift actions and communications with the FBI.    However, none of those funds have been returned to the Plaintiffs yet due to delayed and strained efforts to obtain legal assistance in Hong Kong to acquire the necessary Court Order for the return thereof.    Defendants have taken no action whatsoever to assist the Plaintiffs in their endeavor to retrieve the funds from the imposter.

18.    Plaintiffs provided all of the above by providing the Defendants with a copy of the notebook which it had provided the ODC and which contained all the above requests except those that would be a violation of attorney-client privilege

19.    Defendants failed to respond to Plaintiffs' claim until the Plaintiff's senior member, while talking with Defendant's adjuster, Shimon Getler, in an unrelated matter, was asked to provide him with the facts of the claim.    Defendants' agent said he would do what he could to help the Plaintiff get the frozen funds returned and claim paid.    Plaintiffs provided the Defendants' adjuster with all the materials which it had given to the ODC only to have the claim denied again in Defendants' letter of July 2, 2019.    The reasons given by the Defendants for the denial this time were that there had been no claim made by Plaintiff's clients which was false, that the overdraft in the trust account was not covered under the policy which was false, and that the scam by the

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

imposter which caused the loss of clients' trust funds and the trust account overdraft was not covered which was false.  All of the above losses were covered under the Plaintiffs' policy of insurance issued by the Defendants.

20.    Plaintiffs have heard nothing further from the Defendants concerning their claim and the claim still remains denied and unpaid.

21.    The Plaintiffs' policy defines a claim as follows:

"**Claim**" means:
   a)  A demand or civil proceeding seeking Damages, or
   b)  Service of suit seeking Damages, or
   c)  Institution of alternative dispute proceedings seeking Damages, or
   d)  a demand for services.

"**Damages**" means:

   A monetary judgment … monetary award or monetary settlement . . .

"**Professional Services**" means:

   a)  Those services performed for a client in the Insured's capacity as a lawyer for monetary fee, and
   b)  Those services as an arbitrator, mediator or notary public for a monetary fee, and
   c)  Those services performed as a title agent for a client which are incidental to services performed as a lawyer for the client for a monetary fee, and
   d)  Pro bono service . . .

By Endorsement No. LPL. – 125 (07/12), **Professional Services** was amended to include (f) those services as an administrator, conservator, receiver executor, trustee, guardian, or any similar fiduciary capacity, or court-appointed trustee . . . ."

22.    More specifically, the Defendants wrongfully denied coverage for the claims wrongfully indicating that claims had not actually been made against the Plaintiffs, therefore no coverage was activated.   After receiving the additional information, Defendants then wrongfully denied coverage based upon the fact that the Plaintiffs complied with the Rules of Professional

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

Responsibility by notifying the ODC of the overdraft, thus "admitting liability" without the Defendant's permission or consent.

23.     The Defendants also wrongfully contended that "there is no coverage for either matter as they were not the result of a negligent act, error or omission in the **Insured's** providing **Professional Services** to others."

24.     After Defendants wrongfully refused to defend and/or indemnify Plaintiffs in the Arbitration lawsuit, Synovus Bank moved forward and obtained a judgment against Plaintiff law firm and its senior partner, James P. Stevens, Jr., in the amount of $88,482.85 plus cost in the amount of $3,200 and filed said judgement.   That the arbitration judgment against the Plaintiff, James P. Stevens, Jr., has been filed and now constitutes a lien upon his private home and personal assets.

25.     Defendants also refused to help Plaintiffs in their efforts to recover the funds wired to the Hong Kong Bank requiring the Plaintiffs to hire a barrister in Hong Kong and incur legal fees in at least $38,000.   Plaintiffs were required to file legal action in Hong Kong to obtain a court order for the return of the funds that have been frozen in Hang Seng Bank in Hong Kong. All matters are still pending.

26.     Plaintiffs have demanded that Defendants indemnify them for the amount due to Synovus Bank in that litigation, reimburse Plaintiffs for the amount of money deposited to replace the funds belonging to the clients, reimburse them for legal fees charged by the Hong Kong barrister, pay the costs of arbitration fees to allow Plaintiffs to file and answer and counterclaim, pay the costs of arbitration, and other incidental and consequential damages and expenses.

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

27.    Plaintiffs have suffered significant damages as a result of Defendants' failure to assist in mitigation, defend and indemnify them in this fraudulent attack upon them, and on the claims filed against them by their clients and the bank and for the other consequential and incidental damages and expenses necessarily incurred by Plaintiffs protecting themselves and seeking reimbursement and other necessary expenses and services.

## AS A FIRST CAUSE OF ACTION
### (Breach of Contract against both Defendants)

28.    That the above allegations are realleged as though set out herein verbatim.

29.    That the Defendants issued a Lawyers Professional Liability insurance policy but have breached that agreement by failing to defend the Plaintiffs in the lawsuit filed against it by Synovus Bank, and by failing to reimburse Plaintiffs for the funds it paid to cover the escrow/trust account withdrawals, barrister fees incurred in its attempt to recover funds wired to the Hong Kong bank account, funds to pay their clients for their lost trust funds and other incidental and consequential damages and expenses.

30.    That as a direct and proximate result of these breaches, the Plaintiffs have been injured and damaged and have been forced to defend the Synovus action itself incurring a judgment and costs, costs connected to the defense of same, have had to represent themselves in the ODC matter, has had to pay funds into their escrow/trust account in the sum of approximately $91,0000 in order to pay clients for their lost trust funds, has incurred barrister fees and costs in filing action to recover the funds wired to the Hong Kong bank, and other incidental and consequential damages and expenses, none of which would have been necessary had the Defendants complied with the

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

terms of their insurance agreement.   Plaintiffs are informed and believe that they are entitled to a judgment against the Defendants, jointly and severally, in a sum equal to the actual damages sustained by them.

31.    That Plaintiffs have also suffered incidental and consequential damages as a result of the Defendants' breaches of the contract and would respectfully pray for a judgment against the Defendants, both jointly and severally, in an appropriate sum.

32.    That the refusal by the Defendants to assist in mitigation, indemnify and/or defend the Plaintiffs as above set forth was unreasonable and, as such, entitles the Plaintiff to reasonable statutory attorney fees.

<u>**AS A SECOND CAUSE OF ACTION**</u>
<u>**(Bad Faith against both Defendants)**</u>

33.    That the above allegations are realleged as though set out herein verbatim.

34.    That there existed a Lawyers Professional Liability insurance policy issued by the Defendant, U.S. Fire, and adjusted by the Defendant, Crum.

35.    That Defendants herein have refused to provide the benefits due under the insurance contract and have acted in bad faith in the handling of Plaintiffs' claims as above set forth.

36.    Defendants' refusal to comply with the insurance policies/contracts resulted from each Defendant's bad faith and unreasonable actions and breaches of the implied covenant of good faith and fair dealing in regard to the said insurance contracts/policies.

37.    Defendants' conduct, actions and inactions directly and proximately caused actual, incidental and consequential damages to Plaintiffs.

38.    Plaintiffs are informed and believe that the actions of each Defendant were negligent, willful, wanton and in reckless disregard of their rights under the insurance

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

policies/contracts and were denied in bad faith. Plaintiffs are informed and believe that they are entitled to a judgment against each Defendant, both jointly and severally, as a result of their bad faith failure to defend and/or indemnify the Plaintiffs as above stated and believe that they are entitled to a judgment in a sufficient amount of actual damages to reimburse them for their actual, incidental and consequential losses, as well as an award of punitive damages in an appropriate sum against each Defendant, and attorney fees and costs, jointly and severally.

## AS A FOURTH CAUSE OF ACTION
### (Breach of Implied Duty of Good Faith and Fair Dealing against both Defendants)

39.    That each and every allegation contained herein above is reiterated as fully as if set forth herein verbatim.

40.    Defendant, U.S. Fire, entered into a binding insurance contract with the Plaintiffs which include, upon information and belief, the implied covenant of good faith and fair dealing. These covenants imposed a duty upon Defendant to act in good faith and to deal fairly with Plaintiffs in regard to the claims made against them by Synovus Bank and the Plaintiffs' clients. Additionally, the Defendant, Crum, had a duty to adjust the claim in good faith and with fair dealing towards the Plaintiffs but failed to do so as set forth above.

41.    Plaintiffs are informed and believe each Defendant has breached these covenants of good faith and fair dealing and as a result Plaintiff is entitled to a judgment against the Defendants, both jointly and severally, for actual and punitive damages, and for attorney fees and costs in this lawsuit.

WHEREFORE, having fully set forth their Complaint, the Plaintiffs pray as follows:

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

a.      That Plaintiffs have judgment against the Defendants, jointly and severally, on their First, Second and/or Third Causes of Action for actual, incidental and consequential damages together with prejudgment interest;

b.      That the Plaintiffs have judgment against the Defendants, jointly and severally, on their Second and/or Third Causes of Action, for punitive or exemplary damages;

c.      For the costs and disbursements of this action;

d.      For attorney fees and costs in this lawsuit; and

e.      For such other and further relief as this Court may deem just and proper.

**Barth, Ballenger & Lewis, LLP**

s/Kevin M. Barth

Kevin M. Barth, SC Bar # 559
Post Office Box 107
Florence, South Carolina 29503
Telephone No.:(843) 662-6301
kbarth@bbllawsc.com
Fax No.: (843) 664-8384

***Attorneys for Plaintiff***

March 30, 2020

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

## IMPORTANT POLICYHOLDER NOTICE

As part of our value-added services to our Lawyers Professional
Liability clients, Protexure now offers you a pre-claim and risk mitigation
consultation "Hotline" staffed by independent attorneys that specialize in
the defense of lawyer professional liability claims.

This "hotline" provides you access to seek advice prior to submitting
a claim, or reporting of a circumstance that could give rise to a claim.
It will also serve as a resource to reduce the professional liability risks
inherent in your day-to-day practice of law. Consultation with a "Hotline"
attorney is on a confidential basis and can serve to properly manage any
circumstance that may lead to a potential claim.

Please call our dedicated toll free number Monday – Friday, between 8:30
AM – 5:00 PM (Eastern).

## 1-888-959-2786

Thank you for choosing **Protexure Lawyers** .

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356


**Crum&Forster**

Policy Number: 580-322358-9

INSURER: ▨ **United States Fire Insurance Company**

▨ **The North River Insurance Company**
**305 Madison Avenue**
**Morristown, NJ 07962-1973**

## LAWYERS PROFESSIONAL LIABILITY
## PLATINUM PROTECTION

NOTICE: THIS IS A CLAIMS MADE AND REPORTED POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY PROVIDES COVERAGE FOR *CLAIMS* FIRST MADE AGAINST THE *INSUREDS* AND REPORTED TO THE *INSURER* DURING THE *POLICY PERIOD*. PLEASE READ THIS POLICY CAREFULLY. WORDS AND PHRASES WHICH ARE PRINTED IN *BOLD ITALIC TYPEFACE* HAVE SPECIFIC MEANING AND ARE DEFINED IN SECTION IV. OF THE POLICY. UNLESS STATED OTHERWISE BY SPECIFIC ENDORSEMENT, *DEFENSE EXPENSES* ARE INCLUDED IN THE LIMIT OF LIABILITY AND REDUCE THE LIMIT OF LIABILITY AVAILABLE TO PAY *DAMAGES*.

| | |
|---|---|
| Item 1 | **Named Insured & Street Address:**<br>Stevens Law Firm, P.C.<br>3341 Broad Street    P. O. Drawer 127<br>Loris, South Carolina    29569 |
| Item 2 | *Policy Period:* From 07/21/2018 (Effective) To 07/21/2019 (Expiration)<br>(12:01 a.m. local time at the address shown in Item 1) |
| Item 3 | **Limit of Liability**<br><br>$1,000,000        Each *Claim*<br>$1,000,000        *Policy Aggregate*<br>These amounts include *Defense Expenses* unless this Section is amended by specific endorsement of this policy. |
| Item 4 | **Deductible:**<br><br>$10,000            Each *Claim*<br>This amount applies to *Defense Expenses* unless this Section is amended by specific endorsement of this policy. This amount applies to each *Claim* unless this Section is amended by specific endorsement of this policy. |
| Item 5 | **Premium: $4,691.00 + $0 (0 %, Municipal Tax) + $0 (0 %, County Tax) + $0 (0 %, State1 Tax) + $0 (0 %, State2 Tax)**<br>for the *Policy Period* |
| | **Total: $4,691.00** |
| Item 6 | **Prior Acts: No Limitation** |
| Item 7 | The following endorsements, if any, are made a part of this policy at issuance:<br>**LPL - 100 (09/10), LPL - 103 (03/13), LPL - 125 (07/12), LPL - 126 (01/13), LPL - 127 (03/13), LPL - 129 (08/13), LPL - 130 (08/13), OFAC Notice, LPL - AMEND - SC (09/10) , MI 07 001 01 15** |

These Declarations, the application, and the policy with endorsements attached thereto, constitute the entire agreement between the *Insurer* and the *Insured*.

Countersigned (if required by law):_____        Date:_____

LPL - 100 (09/10)

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

**LAWYERS PROFESSIONAL LIABILITY**

In consideration of the payment of premium, the undertaking of the *Insured* to pay the Deductible herein, and in reliance (attached hereto) and supplements (attached hereto) upon the application and all the information provided to the *Insurer*, and subject to the Declarations, definitions, terms, conditions, limitations, representations, exclusions and endorsements herein and/or attached hereto, the *Insurer* and the *Insured* agree as follows:

## I. INSURING AGREEMENT

### A. Coverage

Subject to the Limit of Liability stated in Item 3. of the Declarations, the *Insurer* shall pay on behalf of the *Insured* all *Damages* and *Defense Expenses* in excess of the Deductible as stated in Item 4. of the Declarations that the *Insured* becomes legally obligated to pay as a result of a *Claim* first made against the *Insured* and reported in writing to the *Insurer* during the *Policy Period* or during any applicable Extended Reporting Period, by reason of a negligent act, error or omission in the performance of *Professional Services* by the *Insured* or by someone for whom the *Insured* is legally responsible.

### B. Defense

Subject to the terms, conditions and exclusions appearing in other Sections of this policy, the *Insurer* has the right and duty to defend any covered *Claim* including, but not limited to, the appointment of legal counsel, even if any of the allegations of the *Claim* are groundless, false or fraudulent.

## II. LIMITS OF LIABILITY AND DEDUCTIBLE

### A. Limits of Liability

1. Subject to 2 that follows, the *Insurer's* Limit of Liability for *Damages* and *Defense Expenses* combined, for each *Claim* first made and reported to the *Insurer* during the *Policy Period*, including any applicable Extended Reporting Period, shall not exceed the amount shown in Item 3 of the Declarations as applicable to "each *Claim*".

2. Subject to 1 above, the *Insurer's* Limit of Liability for *Damages* and *Defense Expenses* combined, for all *Claims* first made and reported to the *Insurer* during the *Policy Period*, including any applicable Extended Reporting Period, shall not exceed the amount shown in Item 3 of the Declarations as applicable to *"Policy Aggregate"*.

3. *Defense Expenses* are included within, and shall reduce, the applicable Limit of Liability available to pay *Damages*.

4. The Limit of Liability shall apply excess of the Deductible amount.

5. All *Related Claims* shall be deemed a single *Claim* and such single *Claim* shall have been deemed to have been made on the date the earliest of such *Claims* was first made against an *Insured* and reported to the *Insurer*, regardless of whether such date is before or during the *Policy Period* and shall be subject to the Limit of Liability as shown in Item 3 of the Declarations as applicable to "each *Claim*".

6. The Limit of Liability available for *Claims* first made against the *Insured* and reported to the *Insurer* during any applicable Extended Reporting Period, is part of, and not in addition to the Limit of Liability stated in Item 3 of the Declarations. Applicable Extended Reporting Periods shall not provide a new, additional or renewed Limit of Liability.

7. If the *Insurer* has exhausted the applicable Limit of Liability by payment of *Damages* and/or *Defense Expenses* or by tender of the remaining Limit of Liability into court, it shall have no further duties to the *Insured* under this policy.

### B. Deductible

The *Insurer* shall only be liable for amounts payable under this policy for *Damages* or *Defense Expenses* which are in excess of the Deductible amount shown in Item 4 in the Declarations. This Deductible amount shall apply separately to each and every *Claim* and shall be borne by the *Insured* and shall remain uninsured. The Deductible amount applies to the payment of *Damages* and *Defense Expenses*. If the *Insurer* advances any amounts within the Deductible, the *Named Insured* shall reimburse the *Insurer* within thirty days of the *Insurer's* request to do so. In the event of *Related Claims*, a single Deductible amount will apply.

### C. Multiple Insureds, Claims and Claimants

Regardless of the number of *Claims*, *Related Claims*, *Insureds* or claimants, the Limit of Liability as shown in Item 3 of the Declarations as applicable to "each *Claim* " and to "*Policy Aggregate*" shall be subject to Paragraph A of this Section II.

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

## III. EXTENSIONS OF COVERAGE

### A. Estates, Heirs, Bankruptcy Extension

In the event of the death or incapacity of the *Insured*, or the bankruptcy of the *Insured*, any *Claim* made against any heir, executor, administrator, assignee or legal representative of the *Insured* or against any trustee in bankruptcy of the *Insured*, which arises from any real or alleged negligent act, error or omission of such *Insured*, shall be deemed to be a *Claim* made against such *Insured* for the purposes of this policy. Bankruptcy or insolvency of the *Insured* or of the *Insured's* estate will not relieve the *Insurer* of any of its obligations hereunder.

### B. Spousal And Domestic Partner Extension

If a *Claim* is made against the lawful spouse or lawful domestic partner of an *Insured* which includes a *Claim* for a negligent act, error or omission made against an *Insured* rendering Professional Services, then such *Claim* shall be deemed a *Claim* made against such *Insured*, provided his or her lawful spouse or lawful domestic partner accepts the same legal counsel as the *Insured* and that such *Claim* is made solely by reason of such lawful spouse's or lawful domestic partner's status as such. This extension, however, shall not apply to any *Claim* alleging any negligent act, error or omission committed or alleged to have been committed by the lawful spouse or lawful domestic partner of an *Insured*.

### C. Personal Injury and Advertising Liability Extensions

Subject to all other terms, conditions and exclusions, this policy covers *Damages* and *Defense Expenses* the *Insured* becomes legally obligated to pay resulting from *Claims* arising out of *Personal Injury* and *Advertising Liability*.

### D. Extended Reporting Period Extensions

#### 1. Automatic Extended Reporting Period

Upon the expiration of this policy for any reason other than for cancellation for nonpayment of premium or for nonpayment of Deductible due hereunder, the *Named Insured* shall be provided with an automatic and non-cancelable period of sixty days, commencing on the policy expiration date, to report *Claims* to the *Insurer* pursuant to Section VI. A. of General Conditions, Notice of *Claim or Circumstance*. Coverage under this extension of time to report a *Claim* (hereinafter referred to as the Automatic Extended Reporting Period) shall apply solely to negligent acts, errors or omissions in rendering *Professional Services* committed or attempted prior to the effective date of nonrenewal or cancellation, whichever occurs first, and which are not otherwise excluded by any terms, conditions or exclusions of this policy. This Automatic Extended Reporting Period shall not be applicable, however, in the event the *Named Insured* has obtained another policy of Lawyers Professional Liability insurance with an inception date as of the termination date of this policy.

#### 2. Optional Extended Reporting Period

Upon the expiration or cancellation of this policy for any reason other than for nonpayment of premium or for the nonpayment of Deductible due hereunder, the *Named Insured* shall have the right, upon payment of the additional premium designated in one of the options below for the designated length of time shown, commencing on the expiration date of the Automatic Extended Reporting Period, to report *Claims* pursuant to Section VI.A. of General Conditions, Notice of *Claim* or Circumstance:

> (a) Optional Extended Reporting Period of 12 months for a premium charge of 100% of the annual policy premium;
> (b) Optional Extended Reporting Period of 36 months for a premium charge of 185% of the annual policy premium;
> (c) Optional Extended Reporting Period of 60 months for a premium charge of 225% of the annual policy premium;
> (d) Optional Extended Reporting Period of 72 months for a premium charge of 250% of the annual policy premium

Coverage under such extension of time to report a *Claim* (hereinafter referred to as the Optional Extended Reporting Period) shall apply solely to negligent acts, errors or omissions in rendering *Professional Services* committed or attempted prior to the effective date of nonrenewal or cancellation, whichever occurs first, and which are not otherwise excluded by any terms, conditions or exclusions of this policy.

LPL - 100 (09/10)

As a condition precedent to the right to purchase this Optional Extended Reporting Period:

>   (a) the total premium and Deductible amounts for this policy must have been paid, and
>   (b) all *Insureds* must be in compliance with the terms and conditions of the policy, and
>   (c) the *Named Insured's* right to practice law has not been revoked, suspended or surrendered at the request of any regulatory authority for reasons other than death, disability or retirement, and
>   (d) the *Named Insured* provides the *Insurer* with written notice of its selection and pays the premium charge for the selected Optional Reporting Period in full within sixty days of the expiration date of the *Policy Period*.

If the Optional Extended Reporting Period requested by the *Named Insured* is effected by the *Insurer*, the additional premium shall be fully earned by the *Insurer* and the Optional Extended Reporting Period cannot be cancelled by the *Insureds* or the *Insurer*. This right to purchase the Optional Extended Reporting Period shall lapse unless the provisions of (a) through (d) in the preceding paragraph are fully met.

### 3. Non – Practicing Insured Extended Reporting Period

(a) Provided this policy (i) has not been cancelled for nonpayment of premium or Deductible and (ii) no other Extended Reporting Period is in effect and (iii) this policy remains in force as to all other *Insureds*, except in the case where all *Insureds* are *Non – Practicing Insureds*, a *Non - Practicing Insured* shall have the right to purchase an unlimited extension of time to report *Claims* that are first made against such *Non – Practicing Insured* and reported to the *Insurer* after the effective date of cessation of the practice of law by reason of negligent acts, errors or omissions alleged to have been committed subsequent to the applicable *Prior Acts Date*, but before the effective date of cessation of the practice of law and not otherwise excluded by the agreements, conditions and exclusions of this policy. The additional premium for this *Non-Practicing Insured* Extended Reporting Period shall be 125% of the *Non - Practicing Insured's* proportionate share of the annual premium (or, 275% of the annual premium in the case where all *Insureds* are *Non – Practicing Insureds)* and is due and payable to the *Insurer* no later than thirty days after the effective date of cessation of the practice of law.

(b) The additional premium charges in (a) above shall be waived for *Non – Practicing Insureds* who have been insured for their Professional Services by the *Insurer* for at least three consecutive annual Policy Periods prior to becoming a *Non- Practicing Insured*.

## E. Deductible Credit for Mediation Extension

The *Insurer* will reduce the applicable Deductible amount by 50% in respect of any *Claim* resolved in its entirety by mediation.

## F. Defendant Reimbursement Extension

The *Insurer* will reimburse an *Insured* $100 per hour for the time such *Insured* attends a trial, court hearing, mediation or arbitration proceeding in connection with a *Claim*, when such attendance is at the at the request of the *Insurer*.

## G. Regulatory Inquiry Extension

If a regulatory body, state licensing board, public oversight board or government agency having regulatory authority over the *Insured's Professional Services*, first initiates an investigation of any *Insured* during the *Policy Period* which arises from *Professional Services* of such *Insured* rendered subsequent the *Prior Acts Date* and, such regulatory inquiry is reported to the *Insurer* pursuant to Section VI. General Conditions, A., Notice of *Claim* or Circumstances, the *Insurer* will reimburse the *Named Insured* for attorney fees, court and regulatory body costs incurred in responding to such inquiry, up to a maximum reimbursement of $12,500. This is the maximum amount the *Insurer* will reimburse, regardless of the number of such inquiries or of the number of *Insureds* involved in such inquiries, for all inquiries first initiated against the *Insureds* during the policy and reported to the *Insurer* pursuant to Section VI. General Conditions, A. Notice of *Claim* or Circumstance.

## H. Subpoena Assistance Extension

If during the *Policy Period*, an *Insured* first receives a subpoena for documents or testimony as a fact witness arising from *Professional Services* rendered by the *Insured* in whole subsequent to the *Prior Acts Date* and such receipt of a subpoena is reported to the *Insurer* pursuant to Section VI. General Conditions A.. Notice of *Claim* or Circumstance, then provided that (a) said subpoena arises out of a matter or lawsuit to which an *Insured* is not a party and (b) provided no *Insured* has been engaged to provide professional advice or testimony in connection with the matter or lawsuit at any previous time, then the *Insurer* will retain an attorney to provide advice to the *Insured* regarding the production of documents, to prepare the *Insured* for sworn testimony and to represent the *Insured* at depositions.

LPL - 100 (09/10)

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

## I. Client Discrimination Extension

If during the **Policy Period**, allegations are made against an **Insured** by a client, or potential client, that any **Insured** refused to perform **Professional Services** for said client or potential client due to discrimination, and such allegations are reported to the **Insurer** pursuant to Section VI. General Conditions, A. Notice of Claim or Circumstance, then provided the allegations did not arise out of such **Insured's** intentional disregard or willful failure to comply with any state or federal laws or regulations governing discriminatory practices, the Insurer will reimburse the Named Insured solely **Defense Expenses** incurred by the **Insured** up to a maximum reimbursable amount of $15,000 for for the entire **Policy Period** for all such allegations, regardless of the number of clients or potential clients making such allegations. The **Insurer** shall provide its consent, not to be unreasonably withheld, to the **Named Insured's** choice of counsel. This policy shall not provide coverage for Damages resulting from such allegations.

**J.** **Disciplinary Proceedings** are not **Claims** under this policy. The **Insurer** shall not have the right and shall not have the duty to defend a **Disciplinary Proceeding** against any **Insured**. It shall be the right and duty of the **Insured** to respond to or defend such **Disciplinary Proceedings**. In the event violations of disciplinary rules or other professional misconduct alleged in a **Disciplinary Proceeding** are not proven by a final and enforceable determination by a tribunal of competent jurisdiction adverse in whole to an **Insured** and, such violations or misconduct is not admitted by an **Insured** , then the **Insurer** will reimburse the **Insured** for reasonable fees, costs and expenses incurred by the **Insured** in the defense of such **Disciplinary Proceeding** up to a maximum reimbursement of $25,000 in total for all **Disciplinary Proceedings** reported to the **Insurer** during the **Policy Period** pursuant to Section VI., General Conditions, A., Notice of **Claim** or Circumstance.

## IV. DEFINITIONS

**Advertising Liability** means legal obligations the **Insured** incurs arising out of the marketing and promotion of the **Insured's Professional Services** by reason of (a) the oral or written publication of material which slanders or libels an individual or entity, or which disparages its goods, services or products (b) the misappropriation of marketing or promotion ideas or styles of business of others, or (c) the infringement of titles or slogans of others.

**Claim** means:
  (a) a demand or civil proceeding seeking **Damages,** or
  (b) service of suit seeking **Damages**, or
  (c) institution of alternative dispute proceedings seeking **Damages**, or
  (d) a demand for services.

**Damages** means a monetary judgment (including pre- and post- judgment interest awarded against the **Insured**), monetary award or monetary settlement negotiated with the **Insurer's** written consent. If the **Insurer** makes an offer to pay the applicable Limit of Liability, it will not pay any prejudgment interest based on the period of time after such offer is made.

**Damages** shall not include:
  (a) any restitution, disgorgement, unjust enrichment or illegal profits by an **Insured;**
  (b) return or offset of fees or over-charges or amounts which are the subject of fee disputes;
  (c) punitive or exemplary damages, awards or judgments or any amounts which are a multiple of compensatory damages, awards or judgments, except to the extent insurance for such damages, awards or judgments is insurable under applicable law and is not otherwise excluded by the provisions of this policy. For the purposes of determining whether such damages are insurable, the law of the state of incorporation or principal place of business of the **Insured** or the **Insurer**, the state where the negligent act, error or omission took place, or the state where the damages are awarded or imposed, whichever is most favorable to the **Insured**, shall be deemed applicable law;
  (d) civil or criminal fines, sanctions or penalties;
  (e) any amounts for which the Insured is not financially liable or for which there is no legal recourse against the Insured;
  (f) subject to (c) above, amounts deemed uninsurable under the law pursuant to which this policy shall be construed;
  (g) amounts paid to comply with any injunctive order or other non–monetary or declaratory relief or award, including amounts ordered to be paid to comply with specific performance or any agreement to provide such relief.

LPL - 100 (09/10)

*Defense Expenses* mean reasonable and necessary fees charged by attorneys designated or approved by the *Insurer* and all other reasonable and necessary fees, costs and expenses resulting from the adjustment, negotiation, arbitration, mediation, defense or appeal of a *Claim*, including premiums on appeal, attachment or similar bonds; provided, however, that this provision does not obligate the Insurer to apply for or furnish any such bond. *Defense Expenses* include amounts payable by the *Insurer* under Section III., Extensions of Coverage, paragraphs F. through J., inclusive. *Defense Expenses* do not include salaries, charges, wages, loss of wages or expenses of any partner, principal, director, officer, member or employee of the *Insured* or the *Insurer* other than as provided in Section III Extensions of Coverage, paragraphs F. through J. inclusive.

*Disciplinary Proceeding* means a forum in which a complaint alleging violation of any professional rule or professional misconduct is brought before a tribunal of competent jurisdiction which shall make a determination subject to appeal or other review and/or a final and enforceable determination as to whether such alleged rules or misconduct is to be the subject of discipline.

*Immediate Family* means the parents, children, grandchildren, brothers, sisters or past or present spouse of any past or present Insured.

*Insured* means the *Named Insured*, Predecessor Firm, and:

    (a) any present or future principal, partner, director, officer, member or employee of the *Named Insured* ;
    (b) any former principal, partner, director, officer, member or employee of the *Named Insured* or *of a Predecessor Firm;*
    (c) the estate, heirs, executors, administrators, assigns and legal representatives of an *Insured* but only in the event of such Insured's death, incapacity, insolvency or bankruptcy, and only to the extent that such *Insured* would otherwise have been provided coverage under the terms, conditions and exclusions of this policy;
    (d) any contract or temporary employee of a Named Insured under the direct supervision of an Insured;
    (e) any lawyer acting as "of counsel";

but only with respect to *Professional Services* performed within the scope of their duties on behalf of the *Named Insured* or *Predecessor Firm*.

*Insurer* means the insurance company named in the Declarations.

Named Insured means the entity(ies), individual, partnership or corporation stated in Item 1. of the Declarations.

*Non-Practicing Insured* means an *Insured* who on a specific date becomes disabled, has died or has otherwise ceased the practice of law for reasons other than a revocation, suspension or surrender of license at the request or demand of any judicial or regulatory authority.

*Personal Injury* means the following which arise from the *Insured's Professional Services:* (a) false arrest, detention or imprisonment; malicious prosecution (b) the publication or utterance of a libel or slander or other defamatory or disparaging statement or disparaging material (c) a publication or utterance in violation of a person's right of privacy (d) the wrongful eviction of a person from a residence (e) wrongful entry into, or invasion of the right of private occupancy.

*Policy Period* means the length of time between the effective date shown in Item 2. of the Declarations and the earlier of (a) the expiration date shown in Item 2. of the Declarations, or (b) the cancellation date of this policy.

*Policy Aggregate* means the amount identified in Item 3. of the Declarations which represents the maximum amount of the *Insurer's* liability for all *Claims*, all *Damages* and all *Defense Expenses* combined under this policy, inclusive of any applicable Extended Reported Period, if purchased.

*Predecessor Firm* means an individual, partnership, professional corporation, professional association, limited liability corporation or partnership which was at all times engaged in *Professional Services* and to whose financial assets and liabilities the *Named Insured* became the majority successor in interest prior to the effective date as stated in Item 2. of the Declarations and which is named as such by specific endorsement to this policy. *Predecessor Firm* does not include any individual, partnership, professional corporation, professional association, limited liability corporation or partnership which was at all times engaged in *Professional Services* and to whose financial assets and liabilities the *Named Insured* becomes the majority successor in interest subsequent to the effective date of this policy as stated in Item 2. of the Declarations unless the *Insurer* at its sole discretion agrees to include such entity. Should the *Insurer* agree to include such entity it may do so for an additional premium and/or with amended policy terms and conditions.

*Prior Acts Date* means the date shown in Item 6. of the Declarations.

LPL - 100 (09/10)

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

**Professional Services** means
    (a) those service performed for a client in the **Insured's** capacity as a lawyer for a monetary fee, and
    (b) those services as an arbitrator, mediator or notary public for a monetary fee, and
    (c) those services performed as a title agent for a client which are incidental to services performed as a lawyer for the client for a monetary fee, and
    (d) pro bono services of an **Insured** if at the time such services were rendered, they were approved by a partner, director or officer of the **Named Insured** to perform such services without compensation, and
    (e) those services as a member of a formal accreditation, standards review or similar professional board or committee solely related to the profession of the practice of law, but only when such formal accreditation, standards review or similar professional board or committee solely related to the profession of the practice of law does not indemnify the **Insured** or have insurance coverage applicable to the **Insured** in respect of such services.

**Related Claims** means all **Claims** arising from negligent acts, errors, omissions that have as a common nexus any fact, circumstance, situation, transaction, event or cause or series of casually connected facts, circumstances, situations, transactions, events or causes.

## V. EXCLUSIONS

This policy does not apply to any **Claim** based upon or arising out of:

**A.** a dishonest, intentional, fraudulent, criminal or malicious act or omission or any intentional or knowing violation of law by any **Insured**. However, the **Insurer** will provide the **Insured** with a defense of such **Claim** and pay such **Defense Expenses** for any such **Claim** until there is a judgment, final adjudication or adverse admission by an **Insured** or a finding of fact against an **Insured** as to such conduct;. However, this exclusion shall not apply to an Insured who, in fact, did not personally commit, direct or participate in committing a dishonest, intentional, fraudulent, criminal or malicious act or omission or any intentional or knowing violation of law.

**B.** (a) physical injury, sickness, disease or the death of any person including mental anguish or emotional distress resulting therefrom, or
    (b) physical injury to, or destruction of any tangible property, including any resulting loss of use thereof; however, this exclusion shall not apply to accounting records of clients of the **Named Insured**;

**C.** any actual or alleged violation of:

    (a) the Employee Retirement Income Security Act of 1974 and any amendments thereto; however, this exclusion shall not apply if a court of competent jurisdiction deems the **Insured** is a fiduciary under such Act solely by virtue of **Professional Services** an **Insured** rendered to any employee benefit plan;(ii) if an Insured is appointed as a Receiver, Trustee or Custodian of an employee benefit plan by a court of law ;
    (b) the Racketeer Influenced and Corrupt Organizations Act;

**D.** any actual or alleged false, deceptive or unfair trade practice, violation of consumer protection laws or false, deceptive or misleading trade practices;

**E.** **Professional Services** performed for any person or entity by an **Insured**, if at the time of any negligent act, error or omission giving rise to the **Claim:**

    (a) such Professional Services were rendered to an Immediate Family Member; or
    (b) such **Insured** or his/her Immediate Family Member controlled or owned more than 10% equity interest, operated or managed such entity; or,
    (c) such **Insured** or his/her Immediate Family Member was a partner, member, director, officer or employee of such entity;

**F.** (a) liability of others assumed by an **Insured** under any contract or agreement, or
    (b) the breach of any express warranty of any contract unless such liability would have attached to the Insured even in the absence of such contract or agreement;

**G.** actual or alleged negligent acts, errors or omissions asserted by or on behalf of an **Insured** against any other **Insured**;

LPL - 100 (09/10)

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

**H.** an *Insured* acting in the capacity as:

(a) an executor, administrator or personal representative of an estate or as a trustee if the *Insured* or a member of the *Insured's Immediate Family* is or was a beneficiary or distributee of said estate or trust; or,

(b) an officer, director, trustee, partner or other member of a governing body of any entity other than the *Named Insured* and other than an accreditation or standards entity within the scope of Section IV, Definitions, paragraph (e) of the definition of *Professional Services;* or

(c) a public official or employee of a governmental body, agency or subdivision thereof, unless such capacity is deemed as a matter of law to be a public official, employee or representative of such entity solely by virtue of an *Insured* rendering *Professional Services*.

**I.** (a) defects in title of which the *Insured* had knowledge as of the date of issuance of any title policy, and

(b) breach of underwriting authority granted an *Insured* by a title insurance company or its delegate, and

(c) liability assumed under contract with any title insurance company to fund a loss payment, participate in a loss payment or fund or reimburse any legal expenses under any title insurance policy.

**J.** *Professional Services* performed on or prior to the *Prior Acts Date* stated in Item 6. of the Declarations;

**K.** negligent acts, errors or omissions or *Related Claims* which have been the subject of any notice given under any prior policy of which this policy is a renewal or replacement;

**L.** any facts or circumstances of which any *Insured* had knowledge as of the effective date of this policy and which could reasonably have been expected to give rise to a *Claim*;

**M.** (a) any misuse or unauthorized use or disclosure of confidential or proprietary data or of personally identifiable information; or

(b) any actual or alleged failure to inform customers or clients of any security breach which has impacted or may impact the confidential, proprietary or personally identifiable information of a customer or client;

**N.** *Professional Services* rendered by an *Insured* while the *Insured's* license to practice law was suspended, revoked, surrendered, lapsed or otherwise not recognized as a bona fide license in the state where such services were rendered;

**O.** any loss sustained by any *Insured* as a beneficiary or distributee of any estate or trust;

**P.** a notarized certification or acknowledgment of signature without an identity check and physical appearance before the *Insured* performing such notarization of the person whose signature was notarized or acknowledged;

## VI. GENERAL CONDITIONS

### A. Notice of Claim or Circumstance

1. The *Insureds* shall, as a condition precedent to the obligations of the *Insurer* under this policy, give written notice of a *Claim* as soon as practicable, but in no event later than sixty days after the expiration of the *Policy Period*. In the event a *Claim* is made during the Extended Reporting Period, if purchased, the *Insureds* shall, as a condition precedent to the obligations of the *Insurer* under this policy, give written notice of such *Claim* as soon as practicable, but in no event later than the expiration of the Extended Reporting Period. Such written notice shall include:

(a) all written correspondence between the claiming party and any *Insured,* and

(b) a written summary of the facts and circumstances of the allegation of the negligent act, error, omission, *Personal Injury* or *Advertisers Liability*

(c) dates and details of the parties involved

(d) possible *Damages.*

2. If during the *Policy Period* or the Extended Reporting Period, if purchased, the *Insured* becomes aware of any facts or circumstances that may reasonably be expected to give rise to a *Claim* and, written notice is given to the *Insurer* in accordance with paragraphs A. 1. and 3. of this Section A. of:

(a) such facts or circumstances, as well as the reasons for anticipating such a *Claim*, and

(b) specific information as to the expected negligent act, error, omission, *Personal Injury* or *Advertisers Liability*,

(c) dates and details of the parties involved, and

(d) the possible *Damages*,

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

then any *Claim* arising out of such specific facts or circumstances that is subsequently made against the *Insureds* and reported to the *Insurer* shall be deemed first made during the *Policy Period* as of the date of such notice.

3. Notice of a *Claim* or circumstances to the *Insurer* shall be given in writing to:

Crum & Forster
Claims Department
305 Madison Avenue
Morristown, New Jersey 07962
305_Liability@cfins.com

## B. Defense and Settlement

1. The *Insurer* shall have the right and the duty to defend any *Claim* regardless of whether the allegations are groundless, false, or fraudulent. In undertaking this right and duty, the *Insurer* expressly retains the right to select defense counsel even when the *Insurer* reserves its rights on issues concerning the applicability of coverage under this policy. The *Insureds* shall pay any *Defense Expenses* within the applicable Deductible shown in Item 4. of the Declarations. The *Insurer's* right and duty to defend any *Claim* and pay *Defense Expenses* shall terminate upon the exhaustion of the Limit of Liability, whereupon the *Insurer* shall have no further obligation or liability to defend the *Insured* or to pay *Defense Expenses*, judgments or settlements. The *Insurer* may make any investigation it deems necessary and may, with the *Insured's* consent, such consent not to be unreasonably withheld, make any settlement of any *Claim* it deems expedient. If the *Insured* withholds consent of such settlement, the *Insurer's* liability for all *Damages* on account of such *Claim* shall not exceed the amount for which the *Insurer* could have settled such *Claim*, inclusive of *Defense Expenses*, incurred as of the date such settlement was proposed to the *Insured*.

2. The *Insureds* and those acting on their behalf shall not admit liability, consent to any judgment, incur any *Defense Expenses* or agree to any settlement without the *Insurer's* written consent, such consent not to be unreasonably withheld. The *Insureds* agree that they shall not knowingly take any action that in any way increases *Damages* or *Defense Expenses* under this policy. Coverage afforded by this policy shall not apply to any *Damages* sustained as a result of any admission of liability or consent to any judgment or agreement to settle, without or prior to the *Insurer's* written consent.

3. The *Insureds* shall provide the *Insurer* with such information, assistance, and cooperation as the *Insurer* and its counsel may reasonably request with respect to the defense and settlement of any *Claim.*

## C. Action Against Insurer

1. No action shall be taken against the *Insurer* unless, as a condition precedent thereto, the *Insureds* shall have fully complied with all of the terms and conditions of this policy, nor until the amount of the *Insured's* obligation to pay *Damages* for any *Claim* shall have been fully and finally determined either by judgment against the *Insured* or by written agreement between the *Insureds*, the claimant, and the *Insurer*.

2. Nothing contained herein shall give any person or entity any right to join the *Insurer* as a party to any *Claim* against the *Insureds* to determine their liability, nor shall the *Insurer* be impleaded by the *Insureds* or their legal representative in any *Claim*.

## D. Cancellation and Non-renewal

1. The *Named Insured* may cancel this policy at any time prior to the expiration date of the *Policy Period* by mailing prior written notice to the *Insurer* or by surrender of this policy to the *Insurer* or its authorized agent. If the *Named Insured* shall cancel this policy, the *Insurer* shall return 90% of the unearned portion of the premium.

2. The *Insurer* may only cancel this policy for nonpayment of premium or deductible. This policy may be canceled by or on behalf of the *Insurer* by delivering to the *Named Insured*, or by mailing to the *Named Insured*, at the address shown in Item 1. of the Declarations, written notice of cancellation at least 10 days before the effective date of cancellation. The mailing of such notice shall be sufficient proof of notice and the effective date of cancellation stated in such notice shall become the expiration date of the *Policy Period*. If the *Insurer* cancels this policy for nonpayment of premium, the *Insurer* shall credit the Insured 90% of the unearned portion of the premium. Payment or tender of any unearned premium by the *Insurer* shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

3. This policy may be non-renewed by the *Insurer* by delivering to the *Named Insured* or by mailing to the *Named Insured* at the address shown in Item 1. of the Declarations, written notice of nonrenewal at least thirty days prior to the expiration date of the *Policy Period*. The mailing of such notice shall be sufficient proof of notice.

### E. Changes in Exposures

1. If the number of attorneys employed by the *Named Insured* increases more than 25% from the amount of attorneys shown in the application attached to this policy at its inception date, the *Named Insured* shall give the *Insurer* notice of such hiring, merger or acquisition as soon as practicable, but in no event more than 30 days after the effective date of hiring, merger or acquisition and the *Insurer* shall then have the right to amend any terms of this policy. There shall be no coverage under this policy for any *Professional Services* subsequent to the date of hiring, merger or acquisition . This paragraph shall not be applicable if the original number of attorneys insured on the effective date of this policy was less than six attorneys.

2. If the *Named Insured* during the *Policy Period* merges or consolidates with another entity in a manner such that the *Named Insured* is not the surviving entity, coverage under this policy for *Professional Services* rendered, or which should have been rendered subsequent to the effective date of such transaction shall be excluded for the remainder of the *Policy Period*. Coverage shall then solely apply to *Professional Services* rendered, or which should have been rendered, between the *Prior Acts Date* stated in Item 6. of the Declarations and the effective date of the transaction whereby the *Named Insured* is not the surviving entity, subject to all the other terms, conditions and exclusions of this policy.

### F. Subrogation

In the event of any payment by the *Insurer* under this policy, the *Insurer* shall be subrogated to the extent of such payment to all *Insureds'* rights of recovery therefrom against any person or entity, and the *Insureds* shall execute all papers required and shall do everything that may be necessary to secure and preserve such rights to enable the *Insurer* to effectively bring suit in their name, and shall provide all other assistance and cooperation which the *Insurer* may reasonably require.

### G. Representations

In granting coverage to the *Insureds*, it is agreed that the *Insurer* has relied upon the representations and statements contained in the application for this policy (and all such previous applications submitted, or made part of any previous policy which this policy may succeed in time) including materials submitted therewith, as being accurate and complete and shall be the basis of the contract and shall become part of such policy as if physically attached. Such representations and statements are deemed to be material to the risk assumed by the *Insurer*.

### H. Other Insurance

All *Damages* and *Defense Expenses* payable under this policy shall be in excess of and shall not contribute with other existing insurance including, but not limited to, any insurance under which there is a duty to defend, regardless of whether any *Damages* or *Defense Expenses* are collectible or recoverable under such other insurance, unless such other insurance is written specifically excess of this policy. This policy shall not be subject to the terms or conditions of any other insurance.

### I. Authorization

The *Named Insured* shall act on behalf of the *Insureds* with respect to the receiving of notices and return premiums from the *Insurer.*

### J. Headings and Titles

The headings, sub-headings, and titles of this policy are for descriptive and reference purposes only and are not to be deemed in any way to limit, modify, or affect the terms and conditions of this policy.

### K. Assignment of Interest

This policy and any and all rights hereunder are not assignable without the written consent of the *Insurer*.

### L. Changes

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the *Insurer* shall not effect a waiver or a change in any part of this policy or estop the *Insurer* from asserting any right under the terms and conditions of this policy, nor shall any terms or conditions be waived or changed except by written endorsement LPL issued to form a part of this policy.

LPL - 100 (09/10)

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

## M. Territory

This policy applies to a *Professional Services* taking place anywhere in the world provided that suit is brought and maintained against the *Insured* within the United States of America, its territories or possessions, Puerto Rico or Canada.

## N. Named Insured Sole Agent

The *Named Insured* will be the sole agent and will be authorized to act on behalf of all *Insured's* for the purpose of giving or receiving any notices, any amendments to or cancellation of this policy, for the completing of any applications and the making of any statements, representations and warranties for the policy, for the payment of the deductible and the exercising or declining to exercise any right under this policy, including the purchase of any Extended Reporting Period.

## O. Liberalization

If during the *Policy Period*, the *Insurer* adopts any provision that would broaden the coverage under this policy without an additional premium charge, the broadened coverage shall automatically apply to this policy.

LPL - 100 (09/10)

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

**United States Fire Insurance Company**
**A Delaware Corporation**
**Home Office: Wilmington, DE**

(A Capital Stock Company)

SIGNATURE

Marc J. Adee
Chairman and CEO

SIGNATURE

James Kraus
Secretary

MI 07 001 01 15

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

THIS ENDORSEMENT CHANGES THE POLICY, READ IT CAREFULLY.

**To be attached to and form part of Policy No:**
**580-322358-9**

**Effective Date of Endorsement: 07/21/2018**

**Issued to: Stevens Law Firm, P.C.**

**Endorsement No: LPL - 103 (03/13)**

---

### DEDUCTIBLE DOES NOT APPLY TO *DEFENSE EXPENSES*

In consideration of the premium charged it is agreed that:

(1) The sentence appearing in Item 4 of the Declarations, Deductible, is deleted and replaced with the following sentence:

> This amount does not apply to *Defense Expenses*.

2. Section II of the Policy, Limits of Liability and Deductible, paragraph B. Deductible, is deleted and replaced with the following:

B. Deductible

> The *Insurer* shall be liable for amounts payable under this policy for *Damages or Defense Expenses* which are in excess of the Deductible amount shown in Item 4 of the Declarations. The Deductible amount shall apply separately to each and every *Claim*, unless amended by specific endorsement of this policy, and shall be borne by the *Insured* and shall remain uninsured. The Deductible amount shall not apply to *Defense Expenses*. In the event of *Related Claims* that are deemed a single *Claim* pursuant to Section II C. below, a single Deductible amount will apply.

(3) Section VI. General Conditions, Paragraph B. Defense and Settlement, sub-paragraph 1. is amended by deletion of this the third sentence:

> "The *Insureds* shall pay any *Defense Expenses* within the applicable Deductible shown in Item 4 of the Declarations."

All other terms, conditions and limitations of the policy remain unchanged.

_____          _____
Authorized Representative                      Date

LPL - 103 (03/13)

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

THIS ENDORSEMENT CHANGES THE POLICY, READ IT CAREFULLY.

**To be attached to and form part of Policy No:**
**580-322358-9**

**Effective Date of Endorsement: 07/21/2018**

**Issued to: Stevens Law Firm, P.C.**

**Endorsement No: LPL - 125 (07/12)**

## AMEND DEFINITION OF PROFESSIONAL SERVICES ENDORSEMENT

In consideration of premium charged, it is understood and agreed that *Section IV. Definitions, Professional Services* is amended to include:

(f) those services as an administrator, conservator, receiver, executor, trustee, guardian, or any similar fiduciary capacity, or court-appointed trustee, however, no coverage shall apply to any loss sustained by any *Insured* as the beneficiary or distributee of any trust or estate

All other terms, conditions and limitations of the policy remain unchanged.

_____
Authorized Representative

_____
Date

LPL - 125 (07/12)

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

THIS ENDORSEMENT CHANGES THE POLICY, READ IT CAREFULLY.

**To be attached to and form part of Policy No:**
**580-322358-9**

**Effective Date of Endorsement: 07/21/2018**

**Issued to: Stevens Law Firm, P.C.**

**Endorsement No: LPL - 126 (01/13)**

### PREDECESSOR FIRM DEFINITION AMENDATORY ENDORSEMENT

It is agreed that section IV. DEFINITIONS, Predecessor Firm is deleted in its entirety and replaced with the following:

**Predecessor Firm** means an individual, partnership, professional corporation, professional association, limited liability corporation or partnership which was at all times engaged in **Professional Services** and to whose financial assets and liabilities the **Named Insured** is the majority successor in interest prior to the effective date as stated in Item 2. of the Declarations. **Predecessor Firm** does not include any individual, partnership, professional corporation, professional association, limited liability corporation or partnership which was at all times engaged in **Professional Services** and to whose financial assets and liabilities the **Named Insured** becomes the majority successor in interest subsequent to the effective date of this policy as stated in Item 2. of the Declarations unless the **Insurer** at its sole discretion agrees to include such entity. Should the **Insurer** agree to include such entity it may do so for an additional premium and/or with amended policy terms and conditions.

All other terms, conditions and limitations of the policy remain unchanged.

_____                    _____
Authorized Representative                              Date

LPL - 126 (01/13)

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

THIS ENDORSEMENT CHANGES THE POLICY, READ IT CAREFULLY.

| | |
|---|---|
| **To be attached to and form part of Policy No:** 580-322358-9 | **Effective Date of Endorsement:** 07/21/2018 |
| **Issued to: Stevens Law Firm, P.C.** | **Endorsement No: LPL - 127 (03/13)** |

### SECURITY INCIDENT AND IDENTIFICATION THEFT EXTENSION ENDORSEMENT

In consideration of premium charged, it is understood and agreed that Section III. EXTENSIONS OF COVERAGE is amended to include the following as paragraph J.:

***K. Security Incident Extension***
The ***Insurer*** will reimburse the ***Named Insured***, for each ***Security Incident***, for expenses incurred to:

(1) hire cyber forensic analysts to determine the extent of an actual security breach that has occurred; or

(2) comply with state or local privacy laws requiring that notification and credit monitoring services are to be provided to individuals when the security, confidentiality, or integrity of their personal information has been compromised,

up to a maximum reimbursable amount of $25,000. This is the maximum amount the ***Insurer*** will reimburse, regardless of the number of such ***Security Incidents*** or of the number of ***Insureds*** involved in such ***Security Incidents***, for all ***Security Incidents*** reported to the ***Insurer***, during the ***Policy Period***, including any applicable Extended Reporting Period.

***Security Incident*** means the unauthorized access to, use, misuse or unauthorized use or disclosure of confidential or proprietary data or of personally identifiable information or data containing private or confidential information in connection with the performance of ***Professional Services*** which results in the violation of any Privacy Regulation.

All other terms, conditions and limitations of the policy remain unchanged.

_____
Authorized Representative

_____
Date

LPL - 127 (03/13)

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

THIS ENDORSEMENT CHANGES THE POLICY, READ IT CAREFULLY.

**To be attached to and form part of Policy No:**
**580-322358-9**

**Effective Date of Endorsement: 07/21/2018**

**Issued to: Stevens Law Firm, P.C.**

**Endorsement No: LPL - 129 (08/13)**

**AMEND EXCLUSION D. ENDORSEMENT**

In consideration of premium charged, it is understood and agreed that *Section V. Exclusions, D.* is deleted and replaced with the following:

This policy does not apply to any *Claim* based upon or arising out of:

*D.* any actual or alleged (a) false, deceptive or unfair trade practice; (b) violation of consumer protection laws; or (c) false, deceptive or misleading trade practices. However, the *Insurer* will provide the *Insured* with a defense of such *Claim* and pay *Defense Expenses*, which are subject to the Deductible, if any.

All other terms, conditions and limitations of the policy remain unchanged.

_____
Authorized Representative

_____
Date

LPL - 129 (08/13)

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

THIS ENDORSEMENT CHANGES THE POLICY, READ IT CAREFULLY.

**To be attached to and form part of Policy No:**
**580-322358-9**

**Effective Date of Endorsement:** 07/21/2018

**Issued to: Stevens Law Firm, P.C.**

**Endorsement No: LPL - 130 (08/13)**

### AMEND SECTION III. EXTENSIONS OF COVERAGE ENDORSEMENT

In consideration of premium charged, it is understood and agreed that **Section III. Extensions of Coverage, G. is deleted and replaced with the following:**

**G. Regulatory Inquiry Extension**

If a regulatory body, state licensing board, public oversight board or government agency having regulatory authority over the **Insured's Professional Services**, first initiates an investigation of any **Insured** during the **Policy Period** which arises from **Professional Services** rendered subsequent the **Prior Acts Date** and, such regulatory inquiry is reported to the **Insurer** pursuant to Section VI. General Conditions, A., Notice of **Claim** or Circumstance, the **Insurer** will reimburse the **Named Insured** for attorney fees, court and regulatory body costs incurred in responding to such inquiry, up to a maximum reimbursement of $25,000. This is the maximum amount the **Insurer** will reimburse, regardless of the number of such inquiries or of the number of **Insureds** involved in such inquiries, for all inquiries first initiated against the **Insureds** during the policy and reported to the **Insurer** pursuant to Section VI. General Conditions, A. Notice of **Claim** or Circumstance.

It is further agreed that no Deductible shall apply to **Section III. Extensions of Coverage:**

**F. Defendant Reimbursement Extension**

**G. Regulatory Inquiry Extension**

**H. Subpoena Assistance Extension**

**I. Client Discrimination Extension**

**J. Disciplinary Proceedings**

All other terms, conditions and limitations of the policy remain unchanged.

_____          _____

Authorized Representative                    Date

LPL - 130 (08/13)

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

OFAC Notice

ELECTRONICALLY FILED - 2020 Mar 30 2:22 PM - HORRY - COMMON PLEAS - CASE#2020CP2602356

THIS ENDORSEMENT CHANGES THE POLICY, READ IT CAREFULLY.

| | |
|---|---|
| To be attached to and form part of Policy No: 580-322358-9 | Effective Date of Endorsement: 07/21/2018 |
| Issued to: Stevens Law Firm, P.C. | Endorsement No: LPL - AMEND - SC (09/10) |

### SOUTH CAROLINA AMENDATORY ENDORSEMENT

This policy may not be canceled by the *Insurer* for any reason at any time except for non payment of premium or deductible by the *Named Insured*. However, VI., General Conditions, D. Cancellation and Nonrenewal, paragraph #3 is deleted and replaced with the following:

3. This policy may be non-renewed by the *Insurer* by delivering to the *Named Insured* or by mailing to the first *Named Insured* at its last known address, and to its agent, written notice of such nonrenewal and the precise reason for it, at least ninety days prior to the expiration of the *Policy Period* if the *policy period* is on year or less, or the anniversary date of the policy if written for a period longer than one year or with an indefinite term. The proof of mailing of such notice shall be sufficient proof of such notice.

However, the *Insurer* will not refuse to renew a policy issued for a term of more than one year until the expiration of its full term, if anniversary renewal has been guaranteed by additional premium consideration.

All other terms, conditions and limitations of the policy remain unaltered.

_____                    _____
Authorized Representative                              Date

LPL - AMEND - SC (09/10)



# South Carolina
# Department of Insurance

**HENRY McMASTER**
Governor

### Capitol Center
1201 Main Street, Suite 1000
Columbia, South Carolina 29201

**RAYMOND G. FARMER**
Director

#### Mailing Address:
P.O. Box 100105, Columbia, S.C. 29202-3105
Telephone: (803) 737-6160

April 6, 2020

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
CRUM & FORSTER SPECIALTY INSURANCE COMPANY
1209 ORANGE STREET
WILMINGTON, DE 19801-0000

Dear Sir:

On April 6, 2020, I accepted service of the attached Summons and Complaint on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-45-170. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to sdubois@doi.sc.gov.** When replying, please refer to File Number 178759, <u>Stevens Law Firm, PC, et al.</u> v. <u>CRUM & FORSTER SPECIALTY INSURANCE COMPANY, et al.</u>, 2020-CP-26-02356.

By:

David E. Belton
Senior Associate General Counsel
(803)737-6200

Sincerely Yours,

Raymond G. Farmer
Director
State of South Carolina
Department of Insurance

Attachment

CC:    Kevin M. Barth
       Post Office Box 107
       Florence, SC    29503

ELECTRONICALLY FILED - 2020 Apr 17 10:27 AM - HORRY - COMMON PLEAS - CASE#2020CP2602356



# South Carolina
# Department of Insurance

**HENRY McMASTER**
Governor

Capitol Center
1201 Main Street, Suite 1000
Columbia, South Carolina 29201

**RAYMOND G. FARMER**
Director

Mailing Address:
P.O. Box 100105, Columbia, S.C. 29202-3105
Telephone: (803) 737-6160

April 6, 2020

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
UNITED STATES FIRE INS CO
ATTN: Legal Secretary
Post Office Box 1973
Morristown, NJ 07962-0000

Dear Sir:

On April 6, 2020, I accepted service of the attached Summons and Complaint on your behalf.  I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70   By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270.  I am not a party to this case.  The State of South Carolina Department of Insurance is not a party to this case.  It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to sdubois@doi.sc.gov.** When replying, please refer to File Number 178758, <u>Stevens Law Firm, PC, et al.</u> v. <u>UNITED STATES FIRE INS CO, et al.</u>, 2020-CP-26-02356.

By:

Sincerely Yours,

David E. Belton
Senior Associate General Counsel
(803)737-6200

Raymond G. Farmer
Director
State of South Carolina
Department of Insurance

Attachment

CC:    Kevin M. Barth
       Post Office Box 107
       Florence, SC    29503

ELECTRONICALLY FILED - 2020 Apr 17 10:27 AM - HORRY - COMMON PLEAS - CASE#2020CP2602356

# Certificate of Electronic Notification

| Recipients |
| --- |
| **Kevin Barth**  - Notification transmitted on 04-17-2020 10:27:45 AM. |

ELECTRONICALLY FILED - 2020 Apr 17 11:24 AM - HORRY - COMMON PLEAS - CASE#2020CP2602356

****** IMPORTANT NOTICE - READ THIS INFORMATION *****

NOTICE OF ELECTRONIC FILING [NEF]

–

**A filing has been submitted to the court RE:** 2020CP2602356

**Official File Stamp:**          04-17-2020 10:27:29 AM

**Court:**          CIRCUIT COURT

Common Pleas

Horry

**Case Caption:**          Stevens Law Firm PC , plaintiff, et al VS United States Fire Insurance Company , defendant, et al

**Document(s) Submitted:**          Service/Acceptance Of Service

Service/Acceptance Of Service

**Filed by or on behalf of:**          Kevin Mitchell Barth

This notice was automatically generated by the Court's auto-notification system.

–

**The following people were served electronically:**

Kevin Mitchell Barth for Stevens Law Firm PC et al

**The following people have not been served electronically by the Court. Therefore, they must be served by traditional means:**

Crum & Forster

United States Fire Insurance Company

ELECTRONICALLY FILED - 2020 Apr 17 11:24 AM - HORRY - COMMON PLEAS - CASE#2020CP2602356